UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 02 CR 200-6 |
| ) | |
| ANDRE SEYMOUR, ) | Judge Rebecca R. Pallmeyer |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Defendant Andre Seymour is serving a 292-month sentence after being convicted at trial in December 2003 for conspiracy to possess with intent to distribute 50 grams or more of cocaine base. *See* 21 U.S.C. § 841(b)(1)(A). He was also convicted of using a communication facility to commit a felony for which he was sentenced to a concurrent four-year term. Mr. Seymour has now filed a motion [1895] for a reduced sentence under the First Step Act, Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5122 (2018), which makes retroactive the changes to the drug amounts that trigger mandatory minimum sentences provided in the Fair Sentencing Act of 2010, Pub. L. 111-220, 124 Stat. 2372, 2372 (2010). The government opposes this motion. The government contends that Mr. Seymour is not eligible for a sentence reduction under the First Step Act and, in the alternative, that the court should exercise its discretion under the Act and deny relief. As explained below, the court concludes that Mr. Seymour is eligible for relief and reduces his sentence to a term of time served.

## BACKGROUND

In July 2002, Andre Seymour and twenty-five co-defendants were charged with various drug crimes arising from a crack cocaine distribution conspiracy. (Indictment [172] at 1–8.) Mr. Seymour was named in three counts: Count I charged Seymour and his co-defendants with conspiracy to possess with intent to distribute 50 grams or more of cocaine and cocaine base. (*Id.* at 3.) Count IX charged Mr. Seymour with distributing 18.8 grams of cocaine base within 1000

1

feet of a school. (*Id.* at 16.) And Count XV charged him with use of a communication facility to commit a felony. (*Id.* at 22.) On December 18, 2003, a jury found Mr. Seymour guilty on Counts I and XV. (*See* Dec. 18, 2003 Min. Order [668].)

At his September 2005 sentencing hearing, then-Judge Wayne Andersen found Mr. Seymour's base offense level to be 38, based on the probation officer's report that he was responsible for distributing 1.5 kilograms or more of crack. (Gov't's Resp. to Def.'s Mot. [1901] at 3.). Judge Andersen applied a two-level enhancement because the conspiracy sold 1.5 kilograms of crack cocaine within 1000 feet of a school and another two-level increase because of the foreseeable presence of firearms in the crack distribution. (*Id.*) Judge Andersen declined to apply a three-level enhancement for Mr. Seymour's status as a "shift supervisor" in the conspiracy, reasoning that it was not a managerial or leadership role. (Sentencing Tr., Ex. 1 to Def.'s Mot., [1895] at 35:5–10.) The court calculated Mr. Seymour's total offense level to be 42. (Gov't's Resp. to Def.'s Mot. [1901] at 4.) Judge Andersen also determined that Mr. Seymour had a Criminal History Category of III, though the court characterized it as "sort of a light-three" due to the nonviolent nature of his prior offenses. (Sentencing Tr. at 37:6.) Under the sentencing guidelines at that time, a total offense level of 42 with a Criminal History Category of III suggested a sentence between 360 months and life. (Def.'s Mot. [1895] ¶ 3.) For reasons of "proportionality with the other defendants and the statutory parameters," Judge Andersen imposed a sentence of 324 months for Count I, a downward departure of 36 months from the bottom of the guideline range. (Sentencing Tr. at 40:9–12.) Mr. Seymour was also sentenced to a concurrent four-year term for Count XV. (*Id.* at 42:18–19.)

Mr. Seymour and five co-defendants challenged their sentences on appeal, arguing that the district court had violated the holding of *Apprendi v. New Jersey*, 530 U.S. 466, 499 (2000), by failing to have a jury make defendant-specific drug quantity findings. *See United States v. Seymour*, 519 F.3d 700, 709 (7th Cir. 2008). The Seventh Circuit rejected the argument, noting that "[t]he district court judge's determinations regarding the drug quantity attributable to each

2

defendant did not increase the penalty for the crime beyond the statutory maximum" and therefore did not violate *Apprendi*. *Id.* at 710. The court also upheld the district court's finding that 1.5 kilograms of crack cocaine could be attributed to each defendant. *Id.* at 710–13.

Since the time his sentence was affirmed, Mr. Seymour has filed three motions for a sentence reduction. (Def.'s Mot [1895] ¶ 4.) In November 2008, he moved for a reduced sentence [1283] pursuant to 18 U.S.C. § 3782(c) and Guideline Amendment 704, which raised the quantity thresholds applicable to the Guideline's crack cocaine base offense levels. (Gov't's Resp. to Def.'s Mot. [1901] at 4–5.) Judge Andersen denied that motion; he concluded that Amendment 704 did not lower the guideline range for Mr. Seymour's offense because there was evidence in the record that Mr. Seymour was responsible for 4.5 kilograms of crack cocaine, meaning that there was evidence to uphold Mr. Seymour's original base offense level. (*Id.* at 5.)

Following Judge Andersen's retirement, the case was reassigned to this court. In December 6, 2011, Mr. Seymour filed his second motion [1551] for a sentence reduction, this time invoking Amendment 750, which further raised the drug quantity thresholds for base offense levels for crack cocaine offenses. Citing evidence considered by Judge Andersen and addressed by the Seventh Circuit, *see Seymour*, 519 F.3d at 712, this court denied the motion, reasoning that the amount of crack for which Seymour should be held responsible, 8.4 kilograms, meant that the same guideline remained appropriate. (Mar. 5, 2013 Min. Order [1637].)

Mr. Seymour filed his third motion [1800] for a sentence reduction *pro se* on October 5, 2015, citing Guideline Amendment 782, which further raised the drug quantity thresholds for base offense levels. He argued that because Judge Andersen found him responsible only for 1.5 kilograms of crack at sentencing, Seymour is entitled to a reduction. (Def.'s Reply in Supp. of Mot. under Am. 782 [1825] at 2.) The government objected, pointing to facts in the record that supported the conclusion that Seymour was in fact responsible for distributing 25.2 kilograms, far more than the 1.5 kilograms that Judge Andersen referred to at sentencing. (Gov't's Resp. to Def's Mot. under Am. 782 [1813] at 9.) This time, the court granted the motion, stating:

3

> [T]his court has been reluctant to make findings that depart significantly from those made by the original sentencing judge, even where such findings appear amply supported by the evidence. In 2007 and 2008, when greater specificity about amounts made no difference to the ultimate sentence, defendant and defense counsel would have had no real incentive to litigate the issue, or challenge the government's assertions. To make new findings now, without a hearing, could present due process concerns. The court thus concludes that the appropriate course in most circumstances is to adopt the findings made by the judge who heard the evidence—in this case, Judge Andersen, who ultimately tagged Mr. Seymour for 4.5 kilograms, but not as much as 8.2.

(Aug. 18, 2016 Order [1837] at 2.) Considering this quantity in light of Amendment 782, Mr. Seymour's new base offense level was 34, and with enhancements, the adjusted offense level is 38. (*Id.* at 3.) Along with a criminal history category of III, Mr. Seymour's new guideline range was 292 to 365 months. (*Id.*) Noting Mr. Seymour's achievements—earning a GED, taking numerous courses, outstanding work evaluations, and zero discipline in fourteen years in custody—the court reduced his sentence to the bottom of the range, 292 months. (*Id.*) Including good time credits, Mr. Seymour's projected release date is now April 8, 2023, according to BOP.gov.

On June 28, 2019, Mr. Seymour filed this motion [1895] for a reduced sentence under section 404 of the First Step Act of 2018, Pub. Law No. 115-391, 132 Stat. 5194, 5122 (2018). The First Step Act made retroactive the Fair Sentencing Act of 2010's changes to the drug amounts that trigger mandatory minimum sentences. When Mr. Seymour was sentenced, the guidelines range for the distribution of 50 grams or more of cocaine base was ten years to life imprisonment, and the range for distributing 5 to 50 grams was five to forty years imprisonment. *See* 21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii) (2002 Supp.) A defendant sentenced for amounts of 28 to 280 grams after the Fair Sentencing Act was enacted would face a range of five to forty years. *See* 21 U.S.C. § 841(b)(1)(B)(iii). These less stringent penalties initially applied only to defendants sentenced after the 2010 Act's enactment. *See Dorsey v. United States*, 567 U.S. 260, 281 (2012) ("[W]e conclude that Congress intended the Fair Sentencing Act's new, lower mandatory minimums to apply to the post-Act sentencing of pre-Act offenders."). But the 2018

4

First Step Act made retroactive the Fair Sentencing Act's increase in the quantity of crack necessary to trigger § 841's penalties.  See Pub. L. No. 115-391, § 404, 132 Stat. 5194, 5222 (2018).  Mr. Seymour accordingly moves for a sentence reduction.

## DISCUSSION

Mr. Seymour asks that the court exercise its powers under the First Step Act and resentence him to a term of time served.  The government contends that Seymour is not eligible for relief under the Act and that, even if he is eligible, the court should still exercise its discretion to deny his motion.  As explained below, the court finds that Mr. Seymour is eligible for a sentence reduction and chooses to exercise its discretion to reduce his sentence to a term of time served.

**A.     Eligibility**

The First Step Act provides, "A court that imposed a sentence for a covered offense may, on motion of the defendant, . . . impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed."  First Step Act § 404(b) (citation omitted).  Section 2 of the Fair Sentencing Act modified the amounts of crack cocaine necessary to trigger certain mandatory minimum sentences, while section 3 eliminated mandatory minimums for simple crack cocaine possession.  Pub. L. No. 111-220, § 2–3, 124 Stat. 2372, 2372 (2010).  "Covered offense" in the First Step Act is defined to mean "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010."  First Step Act § 404(a).  The government contends that Mr. Seymour was not sentenced for a "covered offense" and that he is therefore ineligible for relief.  The court disagrees.

As already noted, at the time of Mr. Seymour's indictment and resulting conviction, the offense of possession with intent to distribute 50 grams or more of crack cocaine carried a ten-year to life sentence.  21 U.S.C. § 841(b)(1)(A)(iii), (B)(iii) (2002 Supp.).  Because the Fair Sentencing Act modified the statutory penalties in § 841(b)(1), along with the amounts the government must prove to meet each statutory penalty, Mr. Seymour contends that he is eligible

5

for relief under the First Step Act. (Def.'s Mot. [1895] ¶ 9.) In other words, because the statutory penalties for the statute the government charged him with violating have changed, he is eligible for a reduced sentence. (Def.'s Reply [1905] at 2–3.)

The government's position, on the other hand, is that a defendant is eligible for a reduced sentence only if the Fair Sentencing Act changed the penalties associated with the quantities of crack cocaine that the defendant actually distributed. (Gov't's Resp. to Def.'s Mot. [1901] at 7, 9–11.) On this view, eligibility for First Step Act relief does not turn on the amount charged in the language of the indictment. (*Id.* at 7.) Thus, the government contends, only those defendants charged with quantities between 50 and 280 grams of crack cocaine are eligible for a reduced sentence, and defendants who actually distributed more than 280 grams, though convicted on charges of 50 grams or more, are not eligible. Seymour is not eligible for a sentence reduction, the government concludes, because Judge Andersen found him to be responsible for 4.5 kilograms of crack cocaine. (*Id.*)

The government's interpretation of the First Step Act is one that it has submitted many times to courts in this district and that has been repeatedly rejected. *See, e.g., United States v. Jones*, No. 10 CR 985, 2019 WL 4942365, at *3 (N.D. Ill. Oct. 8, 2019); *United States v. Williams*, 402 F. Supp. 3d 442, 445 (N.D. Ill. 2019); *United States v. Cross*, 397 F. Supp. 3d 1184, 1186 (N.D. Ill. 2019); *United States v. Wright*, No. 03 CR 362-2, 2019 WL 3231383, at *3 (N.D. Ill. July 18, 2019); *United States v. Johnson*, No. 01 CR 543, 2019 WL 2590951, at *3 (N.D. Ill. June 24, 2019); *United States v. Booker*, No. 07 CR 843-7, 2019 WL 2544247, at *2-3 (N.D. Ill. June 20, 2019). These other courts have concluded that § 404(a)'s phrase "a violation of a Federal criminal statute" refers to what statute the defendant is charged with violating and not his actual conduct. After all, the statute concerns a "covered *offense*," not "covered conduct." *See Williams*, 402 F. Supp. 3d at 445–46; *see also Hughey v. United States*, 495 U.S. 411, 415–16 (1990) (holding that "offense" in 18 U.S.C. § 3663 refers to the "offense of conviction"). Like many colleagues, this court disagrees that the phrase "the statutory penalties for which were modified by section 2

6

or 3 of the Fair Sentencing Act" modifies "violation" as opposed to "Federal criminal statute." As a court in another district explained, "Here, the 'penalties' clause is most naturally read as modifying 'Federal criminal statute,' the noun phrase immediately next to it. Indeed, Congress appears to have deliberately inserted 'Federal criminal statute' after the word 'violation' and added the word 'statutory' before the word 'penalties' to achieve this exact result." *United States v. Rose*, 379 F. Supp. 3d 223, 228 (S.D.N.Y. 2019) (citation omitted). These repeated references to criminal statutes and statutory penalties satisfy the court that "eligibility is determined by the statute(s) underlying the defendant's conviction and penalty, not the defendant's offense conduct." *Id.*

The cases the government cites to argue otherwise are inapposite, as Judge Chang explained in *Williams*, 402 F. Supp. 3d at 446. The Supreme Court in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 489 (1985), did not define the term "offense." And *Sedima's* definition of "violation" as meaning "only a failure to adhere to legal requirements" was limited to the RICO statute. Likewise, *United States v. Hayes*, 555 U.S. 415, 421–426 (2009)—in which the Court held that "a misdemeanor crime of violence" under 18 U.S.C. § 921(a)(3) looked to the defendant's conduct and not what he had been charged with—did not set out a categorical rule for interpretation of all federal criminal statutes. *See Williams*, 402 F. Supp. 3d at 447 ("[The Supreme Court] certainly did not hold that terms like 'crime,' 'offense,' or even 'violation' could or should always be understood to refer only to actual conduct rather than the elements of the crime of conviction."); *see also id.* (noting that in *Nijhawan v. Holder*, 557 U.S. 29, 33–34 (2009), another case the government cites, the Supreme Court acknowledged that "offense" can sometimes refer to a generic crime and not the defendant's conduct).

Nor is the court persuaded that the consensus approach in this district contravenes congressional intent to eliminate sentencing disparities. The government urges that if Mr. Seymour were charged today, his indictment would say that he was responsible for 280 grams or more of crack cocaine; prosecutors originally listed only 50 grams because that amount triggered

7

the most severe penalty, so there was no point in charging a larger quantity. Therefore, if the court considers only the charge stated in the indictment, Mr. Seymour will benefit from having been charged in 2002 rather than now. However significant this concern may be, it is mitigated by the fact that relief under the First Step Act remains discretionary. *See Williams*, 402 F. Supp. 3d at 449 ("The Act does not *require* a judge to reduce a sentence after holding that the defendant is eligible for relief. . . . Not only are judges not required to reduce the sentence, but they would naturally take evidence about the drug quantity into account in doing so."); *Wright*, 2019 WL 3231383, at *3 ("The issue before the Court is whether Wright is eligible for relief under the First Step Act, not whether his eligibility differs from other defendants. The Court will not disregard Wright's eligibility based on an argument that other defendants might be subject to longer statutory minimum sentences."). This court is also concerned that the government's approach would require speculation about what would have happened had the Fair Sentencing Act been in effect in 2002, which the court declines to do. *See Wright*, 2019 WL 3231383, at *3 (quoting *United States v. Pierre*, 372 F. Supp. 3d 17, 22 (D.R.I. 2019)) ("[A]n approach that focuses on the particulars of the record to determine how the specific defendant committed his or her offense of conviction and how those facts would have hypothetically affected the charges brought against the defendant under the new statutory regime 'effectively requires the Court to employ a prosecutor-friendly "way-back machine," to conjure how the charge, plea, and sentencing would have looked had the Fair Sentencing Act of 2010 been in effect.'"). The court therefore concluides that Mr. Seymour is eligible for relief under the First Step Act.

**B.     Discretion to Reduce Sentence**

A court may, for a covered offense, "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." First Step Act § 404(b) (citation omitted). Reducing a sentence is a discretionary matter for the court. *Id.* § 404(c) ("Nothing in this section shall be construed to require a court to reduce any sentence pursuant to this section.").

Mr. Seymour has been in custody since April 10, 2002—or about 216 months. (Def.'s Mot. [1895] ¶ 12.) He seeks a reduction in his sentence either to a term of time served or to a term of 256 months.[1] (*Id.* ¶ 14.) With good-time credit, he asserts, a 256-month sentence would equate to just 218 months in custody. (*Id.*) As noted, he is scheduled to be released on April 8, 2023. To determine whether those additional three years are necessary and appropriate, the court considers sentencing factors set forth in 18 U.S.C. § 3553(a). *See United States v. Mansoori*, No. 97 CR 63-9, 2019 WL 6700166, at *5 (N.D. Ill. Dec. 9, 2019); *see also Rose*, 379 F. Supp. 3d at 234 ("[E]ven if consideration of § 3553(a) factors is not expressly required by the First Step Act, the Court concludes that it is appropriate to use that familiar framework to guide the exercise of discretion conferred by the First Step Act.").

"Evidence of post-sentencing rehabilitation 'may be highly relevant to several of the § 3553(a) factors that Congress has expressly instructed district courts to consider at sentencing.'" *Mansoori*, 2019 WL 6700166, at *5 (quoting *Pepper v. United States*, 562 U.S. 476, 491 (2011)). Mr. Seymour has engaged in numerous post-sentencing activities aimed at self-improvement. For example, even though he obtained his GED many years ago, he has continued to complete a large number of educational and practical training courses. (Ex. 4 to Def.'s Reply [1905].) He also works for UNICOR and receives good work evaluations. (Def.'s Reply [1905] at 9.)

Members of Mr. Seymour's immediate and extended family submitted numerous letters in support of his motion for a reduced sentence. Seymour's youngest son has written in a letter to the court that he expects to help his father get a job when he is released. (*See* Letter from Jahad

---

[1] The request for 256 months is based on his current 292-month sentence and the 36-month downward departure that Judge Andersen included in Mr. Seymour's initial sentence. When he was resentenced under Amendment 782, the court was not permitted to impose a sentence below the bottom of the guidelines range. *See Dillon v. United States*, 560 U.S. 817, 829–30 (2010) (holding that courts may not depart from sentencing guidelines ranges for defendants whose terms of imprisonment were based on a sentencing range that has been lowered by the Sentencing Commission).

Amor Seymour to Judge Pallmeyer (June 14, 2019), Ex. 4 to Def.'s Mot. [1895].) That letter and others confirm that Mr. Seymour is part of a close-knit and supportive family. (*See, e.g.,* Letter from Gail Mackey to Judge Pallmeyer (June 14, 2019), Ex. 6. to Def.'s Mot. [1895].) Despite having been in custody for some 18 years, Mr. Seymour has also managed to stay involved in the lives of his children and grandchildren even from prison. (*See* Letter from Jahad Amor Seymour to Judge Pallmeyer (June 14, 2019); Letter from Shakif Seymour to Judge Pallmeyer, Ex. 3 to Def.'s Mot. [1895]; Letter from Nikia Seymour to Judge Pallmeyer (June 14, 2019), Ex. 5 to Def.'s Mot. [1895].) Mr. Seymour's strong family support network suggests he will be in an environment that encourages a law-abiding life upon release.

The government offers three reasons that the court should not reduce Mr. Seymour's sentence, but none is persuasive. First, the government argues that the court should reduce a defendant's sentence only if that defendant was sentenced to the pre-Fair Sentencing Act mandatory minimum. (*See* Gov't's Resp. to Def.'s Mot. [1901] at 25–26.) But the government reads in a requirement that does not exist; there is no requirement that only those sentenced to the mandatory minimum may receive reduced sentences. Eligibility hinges on the indicted amount of crack cocaine and not the duration of the sentence. *See Williams*, 402 F. Supp. 3d at 445–46. Relatedly, citing one portion of the sentencing hearing, the government insists that the mandatory minimum played no role in Judge Andersen's original sentencing considerations. (*See* Gov't's Resp. to Def.'s Mot. [1901] at 25.) But Judge Andersen did not sentence Mr. Seymour in a vacuum: he acknowledged what the guideline range was and that he was choosing to depart from it. (Sentencing Tr. at 41:21–25.)

Second, the government urges that the court should refrain from granting any relief in light of the drug quantities Seymour was involved with. But that argument essentially repeats the sentencing disparity argument rejected above: that reducing his sentence would be a "windfall" because, were he charged today, Seymour would be indicted for a greater amount of crack cocaine. In essence, the government asks the court to keep Mr. Seymour in prison based on a

10

hypothetical. *See Mansoori*, 2019 WL 6700166, at *5 ("The Court will not assume that any defendant could have been indicted on a greater drug quantity."). True, consistent sentencing for similarly-situated offenders is important, *see Dorsey*, 567 U.S. at 277–79 (noting concerns about "creating new anomalies—new sets of disproportionate sentences—not previously present" when applying new sentencing rules), but such concerns must be balanced against the lengthy sentence he has already served and the personal circumstances suggesting that Mr. Seymour will not offend again and can be a productive member of society. The government has not effectively explained why, after eighteen years, keeping Mr. Seymour in prison until 2023 remains necessary to "promote respect for the law" and "provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Finally, the government notes that Mr. Seymour has committed four prison infractions in the last four years: two for possessing a hazardous tool, one for possessing a non-hazardous tool, and one for violating a furlough condition. (*See* Gov't's Resp. to Def.'s Mot. [1901] at 26–27.) According to the government, these violations show that Mr. Seymour "continues to pose a significant risk for recidivism." (*Id.* at 27.) Mr. Seymour addressed these infractions in his reply brief. (*See* Def.'s Reply [1905] at 6–8.) Both hazardous tool infractions were for possession of a cell phone, and he denied one of the charges. (*Id.* at 6–7.) The possession of a non-hazardous tool violation concerned a lighter. (*Id.* at 7.) And based on an explanation from Mr. Seymour's wife, the violation of a furlough condition appears to have been the result of a mix-up. (*See* Letter from Teneishua Lawrence (July 20, 2019), Ex. 3 to Def.'s Reply [1905].) None of these infractions involved drugs or violence, and none occurred within the last three years. The court is not persuaded that these prison infractions demonstrate that Mr. Seymour poses a significant risk for recidivism.

This court finds that Mr. Seymour is ready to be released. His post-sentencing rehabilitation, strong family network, and the many years he has already served show that a

11

sentence of time served is sufficient and not longer than necessary to achieve the goals of sentencing Mr. Seymour.

## **CONCLUSION**

For the foregoing reasons, Defendant Andre Seymour's motion [1895] under § 404(b) of the First Step Act is granted and the court reduces his sentence to a term of time served. Defendant to be released from custody forthwith. The court leaves intact Seymour's ten-year period of supervised release.

ENTER:

Date: April 15, 2020

_____
REBECCA R. PALLMEYER
United States District Judge